José de Jesús Rivera, State Bar No. 004604
Zubin M. Kottoor, State Bar No. 035778
**Miller, Pitt, Feldman & McAnally, P.C.**
2800 North Central Avenue, Suite 840
Phoenix, Arizona 85004
Telephone: (602) 266-5557
jrivera@mpfmlaw.com
zkottoor@mpfmlaw.com

James F. McDonough, III (GA 117088)
(*pro hac vice* forthcoming)
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254 r
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com
*For Plaintiff FLEET CONNECT SOLUTIONS LLC*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fleet Connect Solutions, LLC;<br><br>                    Plaintiff,<br><br>        v.<br><br>GPS Insight, Inc.;<br><br>                    Defendant. | Case No. _____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this Complaint against GPS Insight, Inc., ("GPS Insight" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.    This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"):

|   | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A. | 6,429,810 | Integrated Air Logistics System | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6429810 |
| B. | 7,058,040 | Channel Interference Reduction | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |
| C. | 7,260,153 | Multi Input Multi Output Wireless Communication Method And Apparatus Providing Extended Range And Extended Rate Across Imperfectly Estimated Channels | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |
| D. | 7,536,189 | System And Method For Sending Broadcasts In A Social Network | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7536189 |
| E. | 7,599,715 | System And Method For Matching Wireless Devices | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7599715 |
| F. | 7,656,845 | Channel Interference Reduction | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| G. | 7,742,388 | Packet Generation Systems And Methods | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| H. | 8,005,053 | Channel Interference Reduction | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053 |
| I. | 8,494,581 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8494581 |
| J. | 9,299,044 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9299044 |
| K. | 9,747,565 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices | https://ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9747565 |

2.      Plaintiff seeks monetary damages.

## PARTIES

3.      Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.      GPS Insight is a corporation organized under the laws of the State of Maryland with its principal place of business located at 7201 E. Henkel Way, Suite 400, Scottsdale, Arizona, 85255.

5.      GPS Insight may be served through its registered agent for service, OSBORN MALEDON, P.A., located at 2929 N. Central Avenue, Suite 2100, Phoenix, Arizona 85012, USA.

**JURISDICTION AND VENUE**

6. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9. Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Arizona Long Arm Statute due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Arizona and in this district.

10. Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District directly and through intermediaries, and offered its products or services, including those accused of infringement here, to customers and potential customers located in Arizona, including in this District.

11. Defendant maintains regular and established places of business in this District.

12. For example, Defendant owns, operates, manages, conduct businesses, and directs and controls the operations and employees of facilities at several locations in this District.

13. Defendant maintains its principal place of business in this District.

4

14.     Defendant has committed acts of infringement from this district, including, but not limited to, use of the Accused Products.

## THE ACCUSED PRODUCTS

15.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

16.     Based upon public information, Defendant owns, operates, advertises, and/or controls the website https://www.gpsinsight.com/ through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.

17.     Defendant manufactures, uses, causes to be used, sells, offers for sale, provides, supplies, or distributes fleet management platform and tracking solution systems.

18.     Defendant manufactures, uses, causes to be used, sells, offers for sale, provides, supplies, or distributes the GPS Insight fleet management platform and tracking solution, which includes, but is not limited to, the ELD-2000, Driveri D-430, and Driveri D-210, its Trailer Tracking System, including trailer tracking tags such as the ST-600, ST-1100, ST-1200, AT-3000, the GPS Insight Portal, PNP-3000, GPSI-4000, GPSI-5000, GPS Insight Driver Application, and associated hardware, software, applications, and functionality (collectively, the "Accused Products").

19.     The Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various communication standards, protocols, and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11a, 802.11ac, 802.11b, 802.11g, and 802.11n.

20.     The wireless communications performed and/or implemented by the Accused Products, among other things, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

21.     The Accused Products also track, analyze, and report vehicle maintenance needs, track or cause to be tracked vehicle locations, and allow for communication between a system administrator and a remote unit, including broadcasting advisory communications.

22.     By way of a letter to Defendant dated April 1, 2022, Fleet Connect described its patent portfolio and provided claim charts of a number of its patents comparing representative claims to Defendant's products. Claim charts for all eleven of the Asserted Patents ('810 patent, '040 patent, '153 patent, '189 patent,'715 patent, '845 patent, '388 patent, '053 patent, '581 patent, '044 patent, '565 patent) were included in this letter (the "FCS Letter").

23.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,429,810**

24.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

25.     The USPTO duly issued U.S. Patent No. 6,429,810 (the "'810 patent") on August 6, 2002, after full and fair examination of Application No. 09/774,547 which was filed January 31, 2001.

26.     Fleet Connect owns all substantial rights, interest, and title in and to the '810 patent, including the sole and exclusive right to prosecute this action and enforce the '810 patent against infringers and to collect damages for all relevant times.

27.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '810 patent.

28.    The claims of the '810 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting logistics and tracking systems.

29.    The written description of the '810 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

30.    GPS Insight has directly infringed one or more claims of the '810 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

31.    GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 2, and 3 of the '810 patent, as detailed in the claim chart attached hereto as **Exhibit A**.

32.    Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above.  Thus, GPS Insight is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,058,040**

33.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

34.    The USPTO duly issued U.S. Patent No. 7,058,040 (hereinafter, the

"'040 patent") on June 6, 2006 after full and fair examination of Application No. 09/962.,718 which was filed on September 21. 2001.

35.    Fleet Connect owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

36.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

37.    The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of transmitting data over media having overlapping frequencies.

38.    The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39.    GPS Insight has directly infringed one or more claims of the '040 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

40.    GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 2, 3, and 12 of the '040 patent, as detailed in the claim chart attached hereto as **Exhibit B**.

41.    GPS Insight had knowledge of the '040 patent at least as of the date when it received in the FCS Letter in April 2022.

42.     Since at least the time of receiving the FCS Letter in April of 2022 until the '040 patent expired in March 2024, GPS Insight also indirectly infringed by inducing others to directly infringe the '040 patent. GPS Insight has induced distributors and end-users, including, but not limited to, GPS Insight's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '040 patent by providing or requiring use of the Accused Products. GPS Insight took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '040 patent, including, for example, claims 1, 2, 3, and 12 of the '040 patent. *See* **Exhibit B**.

43.     Such steps by GPS Insight included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website. GPS Insight was performing these steps, which constitute induced infringement with the knowledge of the '040 patent and with the knowledge that the induced acts constitute infringement. GPS Insight was aware that the normal and customary use of the Accused Products by others would infringe the '040 patent. *See* **Exhibit B**.

44.     Since at least the time of receiving the FCS Letter in April of 2022 until the '040 patent expired in March 2024, GPS Insight has also indirectly infringed by contributing to the infringement of the '040 patent. GPS Insight has contributed to the direct infringement of the '040 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '040 patent, including, for example,

claims 1, 2, 3, and 12 of the '040 patent. The special features constitute a material part of the invention of one or more of the claims of the '040 patent and are not staple articles of commerce suitable for substantial non-infringing use. *See* **Exhibit B**.

45.     GPS Insight's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by GPS Insight.

46.     GPS Insight's direct infringement of the '040 patent was willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights until the '040 patent expired in March 2024.

47.     Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above. Thus, GPS Insight is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III:        INFRINGEMENT OF U.S. PATENT NO. 7,260,153**

48.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

49.     The USPTO duly issued U.S. Patent No. 7,260,153 (hereinafter, the "'153 patent") on August 21, 2007 after full and fair examination of Application No. 10/423,447 which was filed on April 28, 2003.

50.     Fleet Connect owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

51.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '153 patent.

52.     The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

53.     The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

54.     GPS Insight has directly infringed, and continues to directly infringe, one or more claims of the '153 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

55.     GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 2, 19, 28, and 29 of the '153 patent, as detailed in the claim chart attached hereto as **Exhibit C**.

56.     GPS Insight had knowledge of the '153 patent at least as of the date when it received in the FCS Letter in April 2022.

57.     Since at least the time of receiving the FCS Letter in April of 2022, GPS Insight has indirectly infringed and continues to indirectly infringe the '153 patent by inducing others to directly infringe the '153 patent.  GPS Insight has induced and continues to induce customers and end-users, including, but not limited to, GPS Insight's customers, employees, partners, contractors, customers and/or potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '153 patent by providing or requiring use of the Accused Products. GPS Insight has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '153 patent, including, for example, claims

1, 2, 19, 28, and 29.  *See* **Exhibit C**.

58.     Such steps by GPS Insight have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website/dashboard.  GPS Insight has been performing these steps, which constitute induced infringement with the knowledge of the '153 patent and with the knowledge that the induced acts constitute infringement.  GPS Insight has been aware that the normal and customary use of the Accused Products by others would infringe the '153 patent.  GPS Insight's inducement is ongoing.  *See* **Exhibit C**.

59.     Since at least the time of receiving the FCS Letter in April of 2022, GPS Insight has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '153 patent.  GPS Insight has contributed and continues to contribute to the direct infringement of the '153 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '153 patent, including, for example, claim 1, 2, 19, 28, and 29.  The special features constitute a material part of the invention of one or more of the claims of the '153 patent and are not staple articles of commerce suitable for substantial non-infringing use.  GPS Insight's contributory infringement is ongoing.  *See* **Exhibit C**.

60.     Furthermore, on information and belief, GPS Insight has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Fleet Connect's patent rights.

61.     GPS Insight's actions are at least objectively reckless as to the risk of

infringing a valid patent and this objective risk was either known or should have been known by GPS Insight.

62.    GPS Insight's direct infringement of the '153 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

63.    Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above.  Thus, GPS Insight is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

64.    Fleet Connect has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Fleet Connect has and will continue to suffer this harm by virtue of GPS Insight's infringement of the '153 patent.  GPS Insight's actions have interfered with and will interfere with Fleet Connect's ability to license technology.  The balance of hardships favors Fleet Connect's ability to commercialize its own ideas and technology.  The public interest in allowing Fleet Connect to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT IV:        INFRINGEMENT OF U.S. PATENT NO. 7,536,189**

65.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

66.    The USPTO duly issued U.S. Patent No. 7,536,189 (hereinafter, the "'189 patent") on May 19, 2009, after a full and fair examination of Application No. 12/018,588, which was filed January 23, 2008.  A Certificate of Correction was issued on June 25, 2013.

67.    Fleet Connect owns all substantial rights, interest, and title in and to the '189 patent, including the sole and exclusive right to prosecute this action and

enforce said patent against infringers and to collect damages for all relevant times.

68.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '189 patent.

69.    The claims of the '189 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of logistics and tracking systems.

70.    The written description of the '189 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

71.    GPS Insight has directly infringed one or more claims of the '189 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

72.    GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 3, 6, 17, 20, 29, 31, 32, 35, 36, and 52 of the '189 patent, as detailed in the claim chart attached hereto as **Exhibit D**.

73.    Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above.  Thus, GPS Insight is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,599,715**

74.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

75.     The USPTO duly issued U.S. Patent No. 7,599,715 (hereinafter, the "'715 patent") on October 6, 2009 after full and fair examination by the USPTO of Application No. 12/389,245 which was filed on February 19, 2009.  A Certificate of Correction was issued on June 25, 2013.

76.     Fleet Connect owns all substantial rights, interest, and title in and to the '715 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

77.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '715 patent.

78.     The claims of the '715 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications system control and warning systems.

79.     The written description of the '715 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

80.     GPS Insight has directly infringed one or more claims of the '715 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

81.     GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claim 31 of the '715 patent, as detailed in the claim chart attached hereto as **Exhibit E**.

82.     Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above.  Thus, GPS Insight is liable to Fleet Connect in an

amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI:        INFRINGEMENT OF U.S. PATENT NO. 7,656,845**

83.        Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

84.        The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010 after full and fair examination of Application No. 11/402,172 which was filed on April 11, 2006.  A Certificate of Correction was issued on November 30, 2010.

85.        Fleet Connect owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

86.        Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '845 patent.

87.        The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

88.        The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

89.     GPS Insight has directly infringed, and continues to directly infringe, one or more claims of the '845 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

90.     GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claim 18 of the '845 patent, as detailed in the claim chart attached hereto as **Exhibit F**.

91.     GPS Insight had knowledge of the '845 patent at least as of the date when it received in the FCS Letter in April 2022.

92.     Since at least the time of receiving the FCS Letter in April of 2022 until the '845 patent expired in March 2024, GPS Insight also indirectly infringed by inducing others to directly infringe the '845 patent.  GPS Insight has induced distributors and end-users, including, but not limited to, GPS Insight's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '845 patent by providing or requiring use of the Accused Products.  GPS Insight took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '845 patent, including, for example, claim 18 of the '845 patent.  *See* **Exhibit F**.

93.     Such steps by GPS Insight included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website.   GPS Insight was performing these steps, which constitute induced infringement with the knowledge of the '845 patent and with the knowledge that the induced acts constitute infringement.  GPS Insight was aware that the normal and customary use of the Accused Products by others would infringe the '845 patent.

*See* **Exhibit F**.

94.　　　Since at least the time of receiving the FCS Letter in April of 2022 until the '845 patent expired in March 2024, GPS Insight has also indirectly infringed by contributing to the infringement of the '845 patent.  GPS Insight has contributed to the direct infringement of the '845 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '845 patent, including, for example, claim 18 of the '845 patent.  The special features constitute a material part of the invention of one or more of the claims of the '845 patent and are not staple articles of commerce suitable for substantial non-infringing use.   *See* **Exhibit F**.

95.　　　GPS Insight's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by GPS Insight.

96.　　　GPS Insight's direct infringement of the '845 patent was willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights until the '845 patent expired in March 2024.

97.　　　Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above.  Thus, GPS Insight is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VII:　　　INFRINGEMENT OF U.S. PATENT NO. 7,742,388**

98.　　　Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

99.　　　The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665

which was filed July 20, 2005.

100.    Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

101.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

102.    The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

103.    The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

104.    GPS Insight has directly infringed, and continues to directly infringe, one or more claims of the '388 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

105.    GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 3, 4, 5, 7, 8, 9, 11, 12, and 28 of the '388 patent, as detailed in the claim chart attached hereto as **Exhibit G**.

106.    GPS Insight had knowledge of the '388 patent at least as of the date when it received in the FCS Letter in April 2022.

107.    Since at least the time of receiving the FCS Letter in April of 2022,

GPS Insight has indirectly infringed and continue to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent.  GPS Insight has induced and continues to induce customers and end-users, including, but not limited to, GPS Insight's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products.  GPS Insight has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1, 3, 4, 5, 7, 8, 9, 11, 12, and 28.  *See* **Exhibit G**.

108.     Such steps by GPS Insight have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website.  GPS Insight has been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement.  GPS Insight has been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent.  GPS Insight's inducement is ongoing.  *See* **Exhibit G**.

109.     Since at least the time of receiving the FCS Letter in April of 2022, GPS Insight has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '388 patent.  GPS Insight has contributed and continues to contribute to the direct infringement of the '388 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for

example, claim 1, 3, 4, 5, 7, 8, 9, 11, 12, and 28. The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use. GPS Insight's contributory infringement is ongoing. *See* **Exhibit G**.

110. Furthermore, on information and belief, GPS Insight has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Fleet Connect's patent rights.

111. GPS Insight's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by GPS Insight.

112. GPS Insight's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

113. Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above. Thus, GPS Insight is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

114. Fleet Connect has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Fleet Connect has and will continue to suffer this harm by virtue of GPS Insight's infringement of the '388 patent. GPS Insight's actions have interfered with and will interfere with Fleet Connect's ability to license technology. The balance of hardships favors Fleet Connect's ability to commercialize its own ideas and technology. The public interest in allowing Fleet Connect to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT VIII:        INFRINGEMENT OF U.S. PATENT NO. 8,005,053**

115.        Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

116.        The USPTO duly issued U.S. Patent No. 8,005,053 (hereinafter, the "'053 patent") on August 23, 2011 after full and fair examination of Application No. 12/696,760 which was filed on January 29, 2010.  A Certificate of Correction was issued on February 14, 2012.

117.        Fleet Connect owns all substantial rights, interest, and title in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers and to collect damages for all relevant times.

118.        Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

119.        The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of data transmission in wireless communication systems.

120.        The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

121.        GPS Insight has directly infringed one or more claims of the '053 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

122.     GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 3, 6, 7, and 19 of the '053 patent, as detailed in the claim chart attached hereto as **Exhibit H**.

123.     Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above.  Thus, GPS Insight is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IX:      INFRINGEMENT OF U.S. PATENT NO. 8,494,581**

124.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

125.     The USPTO duly issued U.S. Patent No. 8,494,581 (hereinafter, the "'581 patent") on July 23, 2013 after full and fair examination of Application No. 12/547,363 which was filed on August 25, 2009.

126.     Fleet Connect owns all substantial rights, interest, and title in and to the '581 patent, including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

127.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '581 patent.

128.     The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

129.     The written description of the '581 patent describes in technical detail

each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

130.     GPS Insight has directly infringed one or more claims of the '581 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

131.     GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claim 21 of the '581 patent, as detailed in the claim chart attached hereto as **Exhibit I**.

132.     GPS Insight had knowledge of the '581 patent at least as of the date when it received in the FCS Letter in April 2022.

133.     Since at least the time of receiving the FCS Letter in April of 2022 until the '581 patent expired in January 2024, GPS Insight also indirectly infringed by inducing others to directly infringe the '581 patent.  GPS Insight has induced distributors and end-users, including, but not limited to, GPS Insight's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '581 patent by providing or requiring use of the Accused Products.  GPS Insight took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '581 patent, including, for example, claim 21 of the '581 patent.  *See* **Exhibit I.**

134.     Such steps by GPS Insight included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its

website.   GPS Insight was performing these steps, which constitute induced infringement with the knowledge of the '581 patent and with the knowledge that the induced acts constitute infringement.   GPS Insight was aware that the normal and customary use of the Accused Products by others would infringe the '581 patent. *See* **Exhibit I.**

135.     Since at least the time of receiving the FCS Letter in April of 2022 until the '581 patent expired in January 2024, GPS Insight has also indirectly infringed by contributing to the infringement of the '581 patent.   GPS Insight has contributed to the direct infringement of the '581 patent by its personnel, contractors, distributors, and customers.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '581 patent, including, for example, claim 21 of the '581 patent.   The special features constitute a material part of the invention of one or more of the claims of the '581 patent and are not staple articles of commerce suitable for substantial non-infringing use.   *See* **Exhibit I.**

136.     GPS Insight's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by GPS Insight.

137.     GPS Insight's direct infringement of the '581 patent was willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

138.     Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above.   Thus, GPS Insight is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT X:  INFRINGEMENT OF U.S. PATENT NO. 9,299,044

139.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

140.     The USPTO duly issued U.S. Patent No. 9,299,044 (the "'044 patent") on March 29, 2016 after full and fair examination by the USPTO of Application No. 14/480,297 which was filed on September 8, 2014.  See '044 patent at 1.

141.     Fleet Connect owns all substantial rights, interest, and title in and to the '044 patent, including the sole and exclusive right to prosecute this action and enforce the '044 patent against infringers and to collect damages for all relevant times.

142.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '044 patent.

143.     The claims of the '044 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods of managing mobile assets in the field such as personnel, equipment and inventory using handheld data management devices in the field.

144.     The written description of the '044 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

145.     GPS Insight has directly infringed one or more claims of the '044 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

146.     GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 2, 4, 5, and 6 of the '044 patent, as detailed in the claim chart attached hereto as **Exhibit J**.

147.     Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above.  GPS Insight is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT XI:        INFRINGEMENT OF U.S. PATENT NO. 9,747,565**

148.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

149.     The USPTO duly issued U.S. Patent No. 9,747,565 ("'565 patent") on August 29, 2017 after full and fair examination of Application No. 15/071,003 which was filed on March 15, 2016.

150.     Fleet Connect owns all substantial rights, interest, and title in and to the '565 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

151.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '565 patent.

152.     The claims of the '565 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the systems and methods of managing mobile assets in the field such as personnel, equipment and inventory using handheld data management devices in the field.

153.     The written description of the '565 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of

27

the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

154. GPS Insight has directly infringed one or more claims of the '565 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

155. GPS Insight has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 2, 4, 5, 6, 7, 9, and 10 of the '565 patent, as detailed in the claim chart attached hereto as **Exhibit K**.

156. Fleet Connect has been damaged as a result of the infringing conduct by GPS Insight alleged above. Thus, GPS Insight is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**JURY DEMAND**

157. Fleet Connect hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

158. Fleet Connect requests that the Court find in its favor and against GPS Insight, and that the Court grant Fleet Connect the following relief:

    a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by GPS Insight or others acting in concert therewith;

    b. A permanent injunction enjoining GPS Insight and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '153 patent and '388 patent; or, in the alternative, an award of a

reasonable ongoing royalty for future infringement of the '153 patent and '388 patent by such entities;

c.  Judgment that GPS Insight account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of GPS Insight's infringing activities and other conduct complained of herein;

d.  Judgment that GPS Insight's infringements of the '153 patent and '388 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by GPS Insight's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: October 23, 2024            Respectfully submitted,

s/ José de Jesús Rivera
James F. McDonough, III (*pro hac vice* forthcoming)
José de Jesús Rivera
Zubin M. Kottoor
*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*